**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **EVAN GAINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cv-00725** |
| | ) | |
| **CONCENTRIX SREV DELAWARE, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

Evan Gaines started work for Concentrix SREV Delaware, Inc. ("Concentrix") in 2010. During the fall of 2023, he began struggling mentally and emotionally. Then in November of 2023, he was placed on a 30-day Performance Success Plan ("PSP") due to poor work performance. After meeting with People Solutions, and at their request, he took leave under the Family Medical Leave Act ("FMLA"). Concentrix told Gaines that his PSP would be reissued upon his return. When he returned to work in January of 2024, Concentrix issued Gaines a new 30-day PSP with slightly different goals. At the end of the 30-day period, Concentrix found that Gaines did not hit all targets of the PSP, so his employment was terminated. Gaines brought this case challenging his termination.

Concentrix moves for summary judgment on Gaines' Americans with Disabilities Act ("ADA") and FMLA claims. The motion is ripe for decision. (Doc. Nos. 33, 34, 36, 37, 43). Because no material factual disputes exist, the motion will be granted.

## I. <u>Undisputed Material Facts</u>[1]

After assuming the position of Associate Director of Global Business Development, Gaines was diagnosed with Bipolar II, panic disorder, and obsessive-compulsive disorder. (Doc. 38-1 at 4). In 2023, his job performance became the subject of concern based upon his 2023 Annual Performance Review, which identified deficiencies related to activity metrics, team performance, pipeline creation, reporting, and business development results. (Doc. No. 38-3 at 18–21).

As a result, his supervisor, Brendan O'Shaughnessy, placed him on a PSP on November 3, 2023. (Doc. No. 38 ¶ 5). Gaines then met with Kathryn Creedon, a People Solutions manager, on November 9, 2023 to discuss the PSP and his medical condition. (Id. ¶ 6). At that meeting, Creedon and Gaines discussed options to support his mental health issues. (Doc. No. 43-1 at 122–23). Creedon also told Gaines about the option to take FMLA leave. (Id.; Doc. No. 49 at 5). Concentrix told Gaines that because the PSP had already been administered, Concentrix would reissue it when he returned from FMLA leave. (Doc. No. 38 ¶ 9, 10). Gaines took FMLA leave from November 16, 2023 to January 8, 2024. (Id. ¶ 10). He did not request an extension of his leave. (Id. ¶ 9).

Gaines returned to work on January 8, 2024. (Id. ¶ 12, 13). His physician approved his return to work without restrictions at full capacity. (Doc. No. 38-2 at 30). On the same day, O'Shaughnessy gave Gaines a new 30-day PSP to run from January 8 to February 7, 2024. (Doc. No. 38 ¶ 13). O'Shaughnessy told Gaines how to document his progress under the PSP and set up plans for future meetings related to the PSP. (Id. ¶ 14). The January PSP identified performance concerns again related to pipeline creation, reporting accuracy, lead generation, activity metrics,

[1] The facts in this section are undisputed unless noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. No. 38), and the exhibits and affidavits that are not contradicted by the evidence in the record.

discovery and MQL quotas, B2B business success, and team performance. (Id. ¶ 15). The PSP administered in January had slightly different goals from the November PSP. (Doc. No. 37 at 1).

On February 13, 2024, Concentrix terminated Gaines' employment for failing to satisfy the goals of the January 2024 PSP. (Doc. No. 34 at 4).

## II. Legal Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter, and instead determines only whether the evidence presented reveals a disputed material issue of fact for the jury to decide. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## III. Analysis

Gaines asserts ADA and FMLA violations arising from his termination. Under the ADA, he claims that Concentrix discriminated against him based on his disability, failed to accommodate him, and retaliated against him for taking leave. Under the FMLA, Gaines believes that Concentrix interfered with his rights under the FMLA and retaliated against him for taking FMLA leave.

Concentrix argues that Gaines cannot establish that he was disabled or that his disability was a but-for cause of his termination as required under the ADA. (Doc. No. 34 at 6–12). On the failure to accommodate claim, Concentrix argues that Gaines' argument fails under the ADA because he never requested an accommodation that Concentrix denied. (Id. at 12–14). On the FMLA interference claim, Concentrix contends that it did not interfere with Gaines' ability to take FMLA leave, because he received all of the FMLA he requested. (Id. at 16–17). Finally, on the retaliation claims under the ADA and FMLA, Concentrix maintains that Gaines cannot establish that Concentrix retaliated against him because the performance-management process leading to his termination began before he took leave. (Id. at 17–20). Before addressing the substantive claims, Gaines requests that the Court defer ruling under Federal Rule of Civil Procedure 56(d), because Concentrix has withheld discovery. (Doc. No. 37). The Court addresses those arguments below.

A. Rule 56(d) Request

Gaines seeks relief under Federal Rule of Civil Procedure 56(d) to "permit the discovery Defendant has withheld." (Doc. No. 37 at 23). Particularly, he reports that Concentrix has not produced the emails of O'Shaughnessy and Creedon, the check-in calendar records, and other potential comparator records. (Id.) Rule 56(d) permits the Court to grant relief if the nonmovant presents "specified reasons" that he "cannot present facts essential to justify" his opposition to summary judgment.

Gaines does not engage the five factors that guide whether Rule 56(d) relief is justified. (Doc. No. 37 at 23). Those factors are: (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests. Plott v. Gen. Motors Corp., 71 F.3d 1190, 1196–97 (6th Cir. 1995).

The parties engaged in discovery from September 2025 until June 2026. (Doc. Nos. 15, 31). That is reasonable for a single plaintiff, two-claim employment dispute. Gaines admits that a motion to compel was not filed in this case. (Doc. No. 39 at 7). His justification is because he was awaiting correspondence from Concentrix about the discovery in question. (Id.) When Concentrix responded on July 12, 2026, he only had fifteen days left to file a response to Concentrix's motion for summary judgment. (Id.) Thus, Gaines asserts he could not have briefed a motion to compel before the response to the motion for summary judgment was due. (Id.) But, Gaines agreed to an extension to complete discovery until June 24, 2026. (Doc. No. 31). So his complaint about not having time to file a motion to compel is of no moment. Given that the parties extended the deadline to complete discovery twice, if the discovery he seeks was critical, he does not explain why he did not seek a further extension of the deadline to complete discovery. Critically, if not dispositive, Gaines offers no explanation of why the requested discovery is needed to resist Concentrix's motion. Finally, it appears that Concentrix has been reasonably responsive to Gaines' discovery requests. After weighing the five factors, the Court sees no justification to reopen discovery.

B. ADA Claims

Gaines asserts three ADA claims: (1) that Concentrix discriminated against him based on his disability, (2) that Concentrix failed to accommodate him, and (3) that Concentrix retaliated against him for taking leave. The Court will address the discrimination and failure-to-accommodate claims below, and then will address the ADA retaliation claim in conjunction with the FMLA retaliation claim.

**1. Disability Discrimination**

Concentrix argues that Gaines' disability discrimination claim must fail because he was not disabled and he cannot establish that his disability was a but-for cause of his termination. (Doc.

No. 34 at 5–8). Gaines responds that Concentrix knew of his disability several months before placing him on the November PSP and that their reason for terminating him was pretextual. (Doc. No. 37 at 13, 14).

To prevail on his disability discrimination claim, Gaines must prove that Concentrix terminated him because of his disability. Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 319 (6th Cir. 2019). Without direct evidence of discrimination, his claims are governed by the McDonnell Douglas burden-shifting framework to establish circumstantial evidence of discrimination. Under the McDonnell Douglas framework, Gaines must first establish a *prima facie* case by showing that

> (1) he is actually disabled or regarded as having a disability; (2) he is otherwise qualified for the position, with or without a reasonable accommodation; (3) he suffered adverse action; (4) his employer knew or had reason to know of his disability; and (5) his position remained open or he was replaced.

Edwards v. Shelby Cnty., Tennessee, 159 F.4th 489, 498 (6th Cir. 2025). Once Gaines meets that "not onerous" requirement, Concentrix must then offer a legitimate nondiscriminatory explanation for its action. Babb, 942 F.3d at 320. A legitimate nondiscriminatory explanation is the employer's "neutral reason" for taking an action against the employee. Tumbleson v. Lakota Loc. Sch. Dist., 175 F.4th 773, 780 (6th Cir. 2026). After Concentrix does that, the burden shifts back to Gaines to show that Concentrix's proffered neutral reason "was pretextual and used to hide disability discrimination." Id. At summary judgment, Gaines "need not prove" pretext, but he "must prove only enough to create a genuine issue as to whether [Concentrix's] rationale is pretextual." Babb, 942 F.3d at 320 (quoting Whitfield v. Tennessee, 639 F.3d 253, 260 (6th Cir. 2011)).

Of the *prima facie* elements, Concentrix contests whether Gaines was disabled as defined under the ADA, (Doc. No. 34 at 6), and whether Gaines can offer evidence that Concentrix

terminated him because of his disability. (Id. at 7). An individual is considered disabled under the ADA if he "(1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment, or (3) is regarded by h[is] employer as having such an impairment." Gruener v. Ohio Cas. Ins. Co., 510 F.3d 661, 664 (6th Cir. 2008) (citing 42 U.S.C. § 12102(1)) (internal quotation marks omitted). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An individual is "regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

Gaines has presented evidence that he is disabled. He relies on his deposition testimony that his diagnoses of anxiety and bipolar disorder made it extremely hard for him to focus and sleep. (Doc. No. 37 at 12 (citing Doc. No. 43-3 at 40, 41, 142)). Gaines also argues that he was "regarded as" disabled by Concentrix. (Id. at 13). He supports this assertion with People Solutions' written statement that Gaines' "medical condition is impacting his ability to successfully perform his role, [and] [People Solutions] ha[s] a federal obligation to extend potential leave of absence and ADA resources and information to him." (Doc. No. 38-2 at 47).

Given this conflicting testimony about whether Gaines was disabled, or whether Concentrix regarded Gaines as disabled, the Court finds that there is a genuine dispute of material fact as to whether the disability prong of the ADA is satisfied. To survive summary judgment,

however, Gaines must also offer evidence that he was terminated because of his disability. Assuming that Gaines is disabled, he fails to offer evidence of causation based on his disability.

After the *prima facie* elements are satisfied, the burden shifts to Concentrix to identify a "neutral reason" for terminating Gaines. Tumbleson, 175 F.4th at 780. Concentrix has met that burden. Gaines was subject to the PSP on November 3, 2023, because Concentrix identified issues with Gaines' work performance related to "activity metrics, lead generation performance, business development results, reporting accuracy, pipeline creation, and team development." (Doc. No. 34 at 7, 8). Gaines then met with People Solutions on November 9, and at their suggestion, began FMLA leave on November 16, 2023. (Id. at 7 (citing Doc. No. 38-1 at 93)). Concentrix asserts, and Gaines acknowledges, that he knew that he would be placed back on a PSP after he returned from his leave. (Id. (citing Doc. No. 38-1 at 96)). Once Gaines returned from his leave and Concentrix put him on the January PSP, he was given another thirty days to meet the PSP's targets. (Id. at 9). At the conclusion of the thirty days, Concentrix found that Gaines did not meet the targets of the January PSP and terminated him. (Id.) Employee performance is a neutral reason for terminating Gaines. Tumbleson, 175 F.4th at 780. The burden thus shifts back to Gaines to identify a genuine issue on whether Concentrix's proffered neutral reason "was pretextual and used to hide disability discrimination." Id.

Gaines has not met that burden. Gaines argues that his termination was pretextual because the January PSP was "more demanding" than the November PSP. (Doc. No. 37 at 14). However, Gaines does not cite to, nor is the Court aware of, any authority that a new Performance Success Plan with different goals and objectives is evidence of a pretextual termination. Indeed, it seems reasonable because Concentrix gave Gaines a full thirty days to dispel concerns about his job performance. Gaines also argues that leadership at Concentrix failed to hold weekly check-ins as

promised. (Id. at 15). Concentrix contests this, stating that Gaines and his supervisor had numerous informal interactions, Teams meetings, and calls regarding Gaines' progress. (Doc. No. 49 at 3). Regardless, this dispute is not material because an employer need not follow a performance plan to the letter. The Sixth Circuit has made clear there is no requirement that the "decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998). There is no evidence in the record that Concentrix placed Gaines on the November or January PSP because of his alleged disability; it placed Gaines on the PSPs due to his job performance deficiencies, which Concentrix documented in his Annual Performance Review. This was a reasonably informed decision by Concentrix, because Concentrix afforded Gaines a full 30-day evaluation period to demonstrate satisfactory work performance before making the decision to terminate him. (Doc. No. 49 at 4). Termination of an employee for poor performance is not a pretext for disability discrimination. Barlia v. MWI Veterinary Supply, Inc., 721 F. App'x 439, 450 (6th Cir. 2018). Gaines' argument here fails.

Gaines also takes issue with Concentrix's statement that the "performance-management process that resulted in [Gaines'] termination began before [Gaines] took leave and before [Gaines] disclosed his medical condition to the decisionmaker responsible for evaluating his performance." (Doc. No. 34 at 7). Specifically, Gaines argues that Concentrix knew of his mental health condition several months before the administration of the November PSP, which could show pretext of disability discrimination. (Doc. No. 37 at 13). While the dispute about when Concentrix knew of Gaines' disability may be genuine, it is not material. Whether leadership at Concentrix knew of his disability before November of 2023 or after does not relieve Gaines of his burden to show that

his termination was because of his disability. Gaines fails to do that here. Gaines does not offer any evidence that knowledge of his medical condition—whether in April 2023, November 2023, or January 2024—led Concentrix to terminate him because of his disability.

Gaines has not established pretext for his termination. Concentrix put Gaines on the November PSP, Gaines took medical leave a few days later, and Concentrix reissued the PSP in January when Gaines returned to work. Concentrix terminated Gaines when he did not meet the targets of the January PSP on February 13, 2024. (Doc. No. 34 at 8). On this record, that Gaines' performance deficiencies predated any disability leave, a jury could not find that Concentrix's stated neutral reason was pretextual or used to hide disability discrimination. Tumbleson, 175 F.4th at 780.

There exists no genuine dispute of material fact about whether Concentrix discriminated against Gaines because of his disability.

**2. Failure to Accommodate**

To establish a *prima facie* failure to accommodate claim, Gaines must show that (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) Concentrix knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) Concentrix failed to provide a reasonable accommodation. Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018). At issue here is whether Gaines requested a reasonable accommodation and whether Concentrix failed to provide one.

An employer must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). Determining the reasonableness of a proposed

accommodation is a question of fact. Blanchet v. Charter Commc'ns, LLC, 27 F.4th 1221, 1229–30 (6th Cir. 2022) (citing Cassidy v. Detroit Edison Co., 138 F.3d 629, 634 (6th Cir. 1998)).

Concentrix argues that Gaines' reasonable accommodation claim fails because Gaines never requested an accommodation. (Doc. No. 34 at 12). Gaines relies on Concentrix's Accommodation for Disabilities Policy for its employees, which requires that an employee "need not use the term accommodation or request a specific accommodation but may merely indicate to a supervisor or manager that a medical condition is interfering with the performance of her or his job duties." (Doc. No. 38-2 at 51).

Gaines seems to be implying that it was Concentrix's duty to provide or offer Gaines an accommodation once Concentrix was aware of his medical issues and his declining performance. There are problems with his argument. To begin, whether Gaines did or did not ask for an accommodation is immaterial because when Gaines met with People Solutions on November 9, 2023, they offered him the reasonable accommodation to take medical leave, and he took it. There is nothing before the Court that Gaines requested, suggested, or demanded any other accommodation. Thus, even under Gaines' theory, Concentrix followed its own accommodation policy by offering Gaines an accommodation even when he did not ask for one himself. Afterall, the law is clear it is the employer, not the employee, who makes the final decision on what accommodation will be made. See Keever v. City of Middletown, 145 F.3d 809, 812 (6th Cir. 1998) ("Under the ADA regulations, the employer has the ultimate discretion to choose between effective accommodations.").

Next, Gaines complains that his performance was declining and he disclosed that his medical condition was impacting his work, yet "no one asked [him] whether he needed assistance or an accommodation." (Doc. No. 37 at 18 (citing Doc. No. 38-1 at 157)). But, when People

Solutions learned of his disability and his declining performance, they suggested he take medical leave, and he decided to take it. When his medical leave concluded, he returned to work with a note from his physician stating he could return to work with no restrictions. (Doc. No. 37 at 5). He resumed work on January 8, 2024, and did not request any further accommodation. (Doc. No. 49 at 5). Concentrix rightly points out that it is not their burden to independently impose accommodations that neither Gaines nor his physician identified were necessary. See Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) ("Because Plaintiff made no request for accommodation . . . she failed to create an issue of fact as to whether or not the Company failed to reasonably accommodate her.").

Gaines' position also conflicts with established Sixth Circuit case law. The Sixth Circuit has held that when an employee never sought an accommodation for their disability, the employer was not required to provide one. Morgan v. Ohio Dep't of Rehab. & Correction, No. 25-3722, 2026 WL 1009160, at *3 (6th Cir. Apr. 14, 2026) (denying plaintiff's failure-to-accommodate claim because plaintiff did not request an accommodation). Here, Gaines never sought an accommodation from Concentrix. Even so, Concentrix recommended that Gaines take medical leave due to his medical condition during the November 9, 2023 meeting. Gaines then decided to take leave on November 16, 2023. When Gaines returned to work in January after his medical leave, he did not request any further accommodation or tell Concentrix that he needed one. (Doc. No. 38-1 at 97–99). Thus, there is no factual dispute regarding whether Gaines asked for or received an accommodation.

Gaines has also failed to show that Concentrix violated its duty to engage in an interactive process regarding an accommodation. "[O]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." Blanchet, 27 F.4th at 1229 (quoting

Hostettler v. Coll. of Wooster, 895 F.3d 844, 857 (6th Cir. 2018)). The purpose of the duty is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Rorrer v. City of Stow, 743 F.3d 1025, 1040 (6th Cir. 2014) (quoting Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 871 (6th Cir. 2007)). Moreover, failure to engage in the interactive process does not create an independent claim, but it is relevant to whether a reasonable accommodation was available. Thompson v. Fresh Prods., LLC, 985 F.3d 509, 525 (6th Cir. 2021); Blanchet, 27 F.4th at 1232 n.1.

As discussed, Gaines did not request an accommodation at all and, therefore, Concentrix did not fail to engage in an interactive process.

C. ADA and FMLA Retaliation

Gaines claims that Concentrix retaliated against him for engaging in protected activity under the ADA and the FMLA. (Doc. No. 1 ¶ 40, 73). Concentrix argues that it is entitled to summary judgment on Gaines' ADA and FMLA retaliation claims because the PSP and evaluation that ultimately led to his termination began before any alleged protected activity. (Doc. No. 34 at 19).

The ADA and FMLA create causes of action for individuals who are retaliated against for engaging in activity covered by the statutes. Rorrer, 743 F.3d at 1046 (citing 42 U.S.C. § 12203(a)); Wyatt v. Nissan N. Am., Inc., 999 F.3d 400, 419 (6th Cir. 2021). A *prima facie* case under both statutes is practically identical. To succeed in a retaliation claim, the plaintiff must initially prove his *prima facie* case that (1) the plaintiff engaged in activity protected under the ADA or FMLA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. Rorrer, 743 F.3d at 1046 (citing A.C. v. Shelby Cnty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)); Wyatt, 999 F.3d at 419; Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir.

2007). If the plaintiff makes a prima facie case, "the defendant has a burden of production to articulate a nondiscriminatory reason for its action. If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 767 (6th Cir. 2015) (internal citations omitted).

Of the *prima facie* elements, Concentrix only contests causation. Specifically, Concentrix argues that Gaines cannot establish causation because the PSP process that led to his termination began before Gaines took leave. (Doc. No. 34 at 17, 19). Gaines responds that leadership at Concentrix knew of his disability months before it issued the PSP in November of 2023, and thus, the "protected activity preceded the plan." (Doc. No. 37 at 19, 22). Gaines also argues that Concentrix certainly knew of Gaines' disability in January of 2024 when it issued the PSP with new goals and additional metrics, and then terminated him thirty-six days later. (Id. at 19, 22).

The temporal proximity between Gaines' return from medical leave and his termination is enough to satisfy causation. The Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of establishing a prima facie case of retaliation." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). Here, Gaines began FMLA leave on November 16, 2023, and returned to work on January 8, 2024. Concentrix then terminated Gaines on February 13, 2024. The thirty-six-day lapse between Gaines' return from FMLA leave and his termination suffices to establish a genuine issue as to causation. See Wyatt, 999 F.3d at 427 (finding that a one-to-two-month time lapse between the protected activity and the adverse action established causation).

Because Gaines established a *prima facie* case of retaliation, Concentrix must offer a non-discriminatory reason for the adverse action. Concentrix has met that burden. Concentrix asserts that the reason it terminated Gaines was because he "failed to satisfy the objectives identified in the January 2024 Performance Success Plan after months of documented performance concerns." (Doc. No. 34 at 18). Performance deficiencies constitute a non-discriminatory reason for termination. Barlia v. MWI Veterinary Supply, Inc., 721 F. App'x 439, 450 (6th Cir. 2018).

The burden now shifts back to Gaines to show that the reason for the termination was pretextual. To establish pretext, Gaines must show that the legitimate nonretaliatory reason for termination (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to warrant his removal. See Wyatt, 999 F.3d at 421. Whichever method the plaintiff chooses, "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." Braithwaite v. Timken Co., 258 F.3d 488, 493–94 (6th Cir. 2001) (internal quotations and citations omitted). To show an honest belief, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." Smith v. Chrysler Corp., 155 F.3d 799, 806–07 (6th Cir. 1998).

Gaines relies on the same arguments for pretext as he does in the disability discrimination claim. (Doc. No. 37 at 22). As discussed, the Court rejects those arguments for the same reasons. Gaines has not shown that Concentrix did not honestly believe that Gaines failed to satisfy the objectives of the January PSP. There is no genuine dispute of material fact that Concentrix did not retaliate against Gaines under the FMLA or ADA.

D. FMLA Interference Claim

Concentrix finally argues it is entitled to summary judgment on Gaines' FMLA interference claim because Concentrix did not deny Gaines FMLA benefits. (Doc. No. 34 at 16).

To establish a *prima facie* case of FMLA interference, an employee must show that "(1) he was an eligible employee; (2) the defendant was a covered employer under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he notified his employer of his intent to take leave; and (5) the employer denied his benefits or rights to which he was entitled under the FMLA." Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014) (citing Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006)).

Concentrix only contests the fifth element, arguing that Gaines received the FMLA leave he requested. Gaines responds by stating that he was not reinstated properly following his FMLA leave, in violation of the statute. The statute allows eligible employees to take FMLA leave for up to a 12-week period. Edgar, 443 F.3d at 506. If the employee returns to work during that period, they are entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.A. § 2614.

Gaines argues that he did not return to the same terms and conditions because the new January PSP was issued when he returned with slightly different objectives, instead of the November PSP. (Doc. No. 37 at 21). The Sixth Circuit has found that an "equivalent position" under 29 U.S.C. § 2614(a)(1)(B) is: "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." Grace v. USCAR, 521 F.3d 655, 669 n. 13 (6th Cir. 2008). Concentrix reinstated Gaines to the exact same position that

he had before took FMLA leave. He was placed on the November PSP, that he admits he was told would be reissued upon his return to work. (Doc. No. 38-1 at 13). While the goals and metrics might have varied slightly on the January PSP, the duties were "substantially similar" to the November PSP.

There exists no genuine dispute of material fact about whether Concentrix interfered with Gaines' FMLA rights.

## IV. **Conclusion**

For the reasons set forth above, the motion for summary judgment (Doc. No. 33) will be granted.

An appropriate order will enter.

Waverly D. Crenshaw, Jr.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE