IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EVAN GAINES,<br><br>Plaintiff,<br><br>VS.<br><br>CONCENTRIX SREV DELAWARE, INC.,<br><br>Defendant. | Case No. 3:25-cv-00725<br><br>Judge Crenshaw |

---

DEPOSITION OF

BRENDAN O'SHAUGHNESSY

TAKEN ON JUNE 23ND, 2026

---

Prepared by:
Nathan Briggs, Certified Electronic Reporter
TN License No. 1187
Briggs & Associates
P.O. BOX 290512
Nashville, Tennessee 37229
nbriggs1509@yahoo.com

**APPEARANCES:**

**FOR THE PLAINTIFF:**

BRANDON HALL, ESQUIRE
EMPLOYMENT AND COMMERCE LAW GROUP
1625 Broadway, Suite 601
Nashville, Tennessee 37203
615-850-0632
bhall@claw.com

**FOR THE DEFENSE:**

MALIK LUCKETT, ESQUIRE
FBT Gibbons LLP
150 3rd Avenue, Suite #1900
Nashville, Tennessee 37201
615-743-6721
mluckett@fbtlaw.com

you see any check-ins that you had on that first page with Mr. Gaines?

A. Is that what's on the ninth, the January ninth?

Q. It appears that's when you administered the PSP.

A. Okay.

Q. And the comments, it says, "Brendan O'Shaughnessy: Administered on Monday Jan 8."

A. And then Evan -- looks like Evan did a step on the 11th, so a couple days later.

Q. And then if you go to the next page, looks like you documented a one-on-one on January 25th. Do you see that?

A. Mm-hmm.

Q. And where you've got your comments regarding the one-on-one check in with them. Do you see that?

A. I do.

Q. And says, "Good check-in with Evan reviewing the work that he is doing with the team. He has a high-performance selling plan for 1:1s with his team to help focus on individual development. He had a good outline and cadence set with the team on specific areas of their business and pipeline. B2B - the focus on target accounts has BDRs aligned with sellers and new cadences that the BDRs have created have launched. We didn't get into progress/results. Activity - the results ending from

the prior week were short - only 1 BDR hit 1 of 3 goals. Evan assured me it was a top priority moving forward. Results - Still 2 weeks left in the month and 1 employee is at quota. The update next week will help to tell a better story on how the month will end." Did I read that correctly?

A. Yep.

Q. Okay. And do you see any notes from any other one-on-one check-ins that you had with Mr. Gaines?

A. Not in this document.

Q. Okay.

MR. HALL: We can mark that as exhibit and close out, please.

MR. BRIGGS: Marked.

(Exhibit 7 was entered into evidence)

By MR. HALL:

Q. Okay, I'll show you another document.

A. Okay, I see it. There's nineteen pages.

Q. Yes. And I'd like you to scroll to Page 15, please.

A. Okay.

Q. And that appears to be an email from you to Jamie Hickey on February 9th, 2024. Is that correct?

A. Yes.

Q. All right, and looks like you've included a

(Whereupon, a recess was observed)

MR. BRIGGS: It is 4:26 and we are back on the record.

By MR. HALL:

Q. Okay, Mr. O'Shaughnessy, I don't have too much more for you. During his deposition, Mr. Gaines testified that there were known accuracy issues with Salesloft, that he had reported inaccuracy issues. Would you disagree with that?

A. I believe we talked about it earlier, but there was an instance, I recall, where there was a sync issue, where Zarine, and Sales Ops, and Salesloft wound up figuring out why some things weren't syncing over correctly. But it was addressed, and, you know, fixed, and figured out.

Q. Okay. And if Mr. Gaines testified that he requested more one-on-ones with you for coaching purposes, would you disagree with that?

A. Yeah, I met with Evan very, very frequently, probably beyond what would be considered reasonable at somebody who is at that level with that experience. We spent tons of time together over the course of -- what was it, fourteen months?

Q. But what I was asking is, if Mr. Gaines testified that he requested those one-or-one, would you


Case 3:25-cv-00725 Document 54-2 Filed 10/19/26 Page 5 of 7 PageID #: 1426

A. I don't know what there would be. I mean, emails from the conversations, kind of like what we saw. There would be calendar invites that I probably put on the calendar or that he could put on the calendar. Yeah, there would be -- yeah, there would be things like that. I don't know what else there could be, but I'm just drawing a blank.

Q. Okay. Do you recall -- when Mr. Gaines took his FMLA leave, do you recall telling Sarah Betancourt that Mr. Gaines' leave was convenient timing?

A. No, no. I wouldn't talk about any details of that with anyone.

Q. Okay. And so if Sarah says that you did say that, you would dispute it?

A. Yeah.

Q. Do you recall when Mr. Gaines came back from his FMLA leave, when you all had the one-on-one meeting to issue the new PSP, that you asked him how his break was?

A. Are you implying that I was making light of a leave?

Q. Yes.

A. I would not do that.

Q. So if Mr. Gaines testified that you did say that, you would dispute it?

A. What I'm saying is that's taken grossly out of

# CERTIFICATE

I, NATHAN D. BRIGGS, Licensed Court Reporter within and for the State of Tennessee, do hereby certify that the above deposition was reported by me and that the foregoing pages of the transcript is a true and accurate record to the best of my knowledge, skills, and ability.

I do further certify that I am neither kin, counsel, nor interest to any party hereto.

IN WITNESS WHEREOF, I have here unto affixed my hand this 9th day of June, 2026.

_________________________

NATHAN BRIGGS
CERTIFIED ELECTRONIC REPORTER
TENNESSEE LICENSE NO. 1187
Briggs & Associates
P.O. BOX 290512
Nashville, TN 37229
615-561-9785
nbriggs1509@yahoo.com