EMPLOYMENT AND COMMERCE LAW GROUP
EST. 2017


G. Brandon Hall, Attorney
bhall@eclaw.com


June 21, 2026

**VIA ELECTRONIC MAIL**
Mekesha H. Montgomery, Esq.
Malik Luckett, Esq.
FBT Gibbons LLP
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
mmontgomery@fbtgibbons.com
mluckett@fbtgibbons.com

**RE: Evan Gaines v. Concentrix SREV Delaware, Inc., Supplemental Discovery Deficiency Letter.**

Counsel:

I have finally had an opportunity to fully review Defendant's Responses to Plaintiff's Discovery Deficiency Letter, Plaintiff's Second Set of Interrogatories, Plaintiff's Second Request for Production, and Plaintiff's Request for Admissions. This letter follows Plaintiff's prior deficiency correspondence and relates to Defendant's supplemental document production. Specifically, we believe many responsive documents still have not been produced. Additionally, this letter addresses a serious problem with the integrity of Defendant's native document production. Plaintiff writes under Fed. R. Civ. P. 26, 34, 37; and Local Rule 37.01 to require correction and requests a conference.

**A. <u>Issues related to the production of "native files."</u>**

A review of the produced native files, including their embedded metadata, shows that the files are named after responsive messages that were not produced, while the contents of those files are unrelated communications. The responsive messages that Defendant's own process identified do not appear anywhere in the production.

Plaintiff sets out below what the files are, what the analysis shows, and what Defendant must do. Two work-product analyses supporting this letter, a metadata report, and an index of the responsive messages that were named, but not produced, are available and can be shared on request.

1. **The native files are a re-rendered export, not a native production with metadata.**

The 281 HTML files in Defendant's native production are not native files and are not a standard forensic export. Each is a generated web page containing a stylesheet, an embedded font, structured message elements, and a script that re-sorts the messages by time when the page opens. No load file accompanies the production, and the files carry no producer or export metadata. The files are a tool's rendering of chat data for review, not the native records.

2. **The filenames identify responsive messages that do not appear in the production.**

Of the produced HTML files, 89 are named after a specific message rather than a chat channel. The text of those filenames reads as responsive material, for example "Did you not terminate him timely," "I am inclined to ask for a doctor's release," "FYI FMLA was approved in ADP today," "yes it is a medical leave," "I also have the form to terminate his SS," and "could you share that with Evan." Plaintiff searched the full text of every produced file. Of those 89 files, 88 contain no occurrence of the message named in the filename, and the message named in the filename appears nowhere in the production. The body of each such file is an unrelated conversation, often involving employees with no connection to this case, or is a poll or an application card. In other words, the filenames identify responsive messages that Defendant's search or review process flagged, but the messages themselves were never produced, and non-responsive content was produced in their place.

3. **The pattern indicates a collection-and-export failure that should be explained.**

This pattern is consistent with a review or search layer that generated a list of responsive messages and named each output file after the responsive message, followed by an export step that wrote the wrong record into each file. Plaintiff does not presume the cause. Defendant is in sole possession of the facts about how these files were collected, searched, reviewed, named, and exported. Please provide a written description of that process, including the identity of any vendor, software, or artificial-intelligence tool used, how responsive items were identified, how the output files were named, and how the file contents were generated. If a privilege is asserted as to any part of the process, identify it with particularity. *Please note, we are not claiming this was an intentional act or in bad faith, we believe it was simply an error in the search/review/extraction process*.

4. **Defendant must re-collect and re-produce these communications from the native source.**

Defendant must re-collect the relevant Microsoft Teams and related communications from the native source and produce them in native or near-native form with a complete load file and metadata. The produced HTML retains, within each message, a unique Microsoft Teams message identifier and a precise timestamp. Plaintiff has recovered those identifiers and will provide them so that Defendant can locate and produce the corresponding native records. At a minimum, Defendant must produce the actual responsive messages whose text appears in the 89 filenames, together with the complete conversations in which they occurred.

5. **Edited messages, attachments, and stripped metadata.**

Fifteen produced messages are marked as edited, but the produced files show only the edited text. We request you produce the original text and the edit history for each. Several chats

reference attachments through SharePoint links, including an ADP contact document and a Unum short-term-disability flyer, and those attachments were not produced. We ask that Defendant please produce any attachments referenced in the messages/chats. The HTML rendering also stripped native metadata, including the full participant roster, any blind copies, the conversation and custodian identifiers, as well as read, delivery, and deletion status. The native re-production must include this metadata.

**6. Undisclosed custodians and witnesses.** The produced messages were authored by numerous Concentrix employees who do not appear in Defendant's Rule 26 disclosures or its answer to Interrogatory No. 2, which identified only Mr. O'Shaughnessy, Ms. Hickey, and Ms. Creedon. The additional authors include Jacki Schwartz, Terry Sanders, Naomi Kraemer, Bailey Dorsett, Virginia Maedgen, Nicholas Ahr, and Jena Brown, among others. If these individuals do have knowledge or were involved in any of the facts alleged in the complaint, Defendant's answer to the complaint, or discovery; please supplement the witness disclosure and the custodian list to account for these individuals, and search their files.

Defendant is reminded of its obligations under Federal Rule of Civil Procedure 26(g) and of its continuing duty to preserve. Given that responsive messages identified by Defendant's own process are absent from the production, please confirm in writing that all native Teams and related communications concerning Mr. Gaines, his performance, his Performance Success Plans, his medical condition, his leave, and his termination have been preserved in native form with metadata intact, and that nothing has been deleted, auto-purged, or altered since the duty to preserve attached.

**B. <u>Remaining Deficiences in Defendant's Supplemental Production</u>**

Plaintiff appreciates the supplemental production. Several deficiencies remain, and the production itself has surfaced new ones. The specific items are set out below. Each cites the governing request and, where applicable, the Bates numbers from the Supplemental Master Production (GAINES000001 through GAINES000603).

**1. The email production came from a single mailbox, and in part from a deletion folder.**

Every email in the Master PDF, GAINES000001 through GAINES000603, traces to the mailbox of Jamie Hickey in People Solutions. The Outlook header and/or footer on each page confirms the source, and for the block at GAINES000055 through 000073 the header states that the messages were printed from Ms. Hickey's Deleted Items folder. Two problems follow. First, the mailboxes Brendan O'Shaughnessy, Kathryn Creedon, and Evan Gaines were not collected, although Request for Production No. 14, 15, 32, and 34 sought electronically stored information from these accounts. Second, many responsive emails were located in a deletion folder. Please confirm in writing when the litigation hold issued, what it covered, and that no responsive email has been deleted, auto-purged, or lost, and explain why responsive emails were in Deleted Items.

**2. The emails were assembled by manual printing for the EEOC response, not collected for this litigation.**

The produced emails are not native files. They are manual Outlook print-to-PDF pages, with no metadata and no load file. The headers/footers show the dates on which they were printed,

including several from April 12 through 15, 2024, immediately before Defendant's May 20, 2024 EEOC position statement. This indicates that the emails were gathered to support the EEOC response and that no separate, broader search was run for this lawsuit. The set is a curated group of discrete chains. It contains no emails before November 3, 2023 and none of the search-term electronically stored information sought by Request for Production No. 14.

3. **Defendant has not produced the decision-makers' electronically stored information.**

The emails Defendant produced were exported from Ms. Hickey's Outlook folder as screenshots, without native files or metadata, and Defendant produced no text messages or Microsoft Teams messages of the decision-makers. Requests for Production Nos. 9, 14, 15, 32, and 34 call for this material. Please run the search terms set out in Request No. 14 across the custodial files of Mr. Gaines, Mr. O'Shaughnessy, Ms. Hickey, and Ms. Creedon for the period August 1, 2023 through February 28, 2024, produce responsive electronically stored information in native form with metadata, and confirm in writing the date the litigation hold issued and its scope (Interrogatory Nos. 9 and 10). The use of a "Deleted Items" folder as a production source makes the preservation question pressing.

4. **The Performance Success Plan check-in records have not been produced, and Defendant's related answers are evasive.**

The Workday record reflects a single documented check-in during the January 8 to February 7, 2024 window, on January 25, 2024 (GAINES000546). Defendant nonetheless denied Request for Admission No. 19 and answered Interrogatory No. 20 only that Mr. O'Shaughnessy "met with Plaintiff on a weekly basis." Please produce all calendar entries, invitations, acceptances, cancellations, and non-attendance records for the four scheduled check-ins (Request for Production No. 33) and supplement Interrogatory No. 20 meeting by meeting.

5. **Defendant must produce the comparator records and the metric data underlying the Performance Success Plan.**

Defendant refused the Zarine Pardiwalla file outright (Request No. 30), produced only Workday worker-history shells for Ryan Pearlman (Request No. 29), and improperly narrowed the comparator interrogatories (Interrogatory Nos. 11 and 12). Defendant also produced no Salesloft, Salesforce, or 6Sense data substantiating the claimed goal failures, although Plaintiff requested that data and Defendant cited it as the basis for the termination (GAINES000061). Please produce the comparator performance, plan, discipline, and compensation records, the underlying performance data (Request No. 36 and Interrogatory No. 21), and supplement Interrogatory Nos. 11 and 12.

Given the fact we have an extremely tight deadline and depositions scheduled Monday and Tuesday, I will move forward with the scheduled depositions. However, I will expressly reserve the right to reconvene the deposition(s), if necessary, upon receipt of the supplemental production. If these matters are not resolved, Plaintiff will seek relief from the Court, including an order compelling a proper native re-production, potential sanctions for spoilation of evidence, the fees incurred under Rule 37(a)(5), and any further relief warranted by the absence of responsive

materials. Plaintiff would prefer to resolve these issues by agreement and is available to confer at your convenience.

Sincerely,

**THE EMPLOYMENT & COMMERCE LAW GROUP**

**G. Brandon Hall**

1625 Broadway, Suite 601 • Nashville, TN 37203 • 615-850-0632 • (866) 578-6038 f