G. Brandon Hall, Attorney
bhall@eclaw.com

October 12, 2026

**VIA ELECTRONIC MAIL**
Mekesha H. Montgomery, Esq.
FBT Gibbons LLP
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
mmontgomery@fbtgibbons.com

**RE: Evan Gaines v. Concentrix SREV Delaware, Inc., Supplemental Discovery Deficiency Letter.**

Counsel:

We are writing to follow-up on our discovery deficiency letters and Defendant's response(s), or lack of response. In Defendant's July 12, 2026 response to our renewed discovery deficiency letter, it committed to looking into several of these issues, but to date, we have not received a response. As you are aware, discovery is not stayed during dispositive motions. Although summary judgment is still pending, we must prepare for trial, so we request Defendant respond to these issues sooner rather than later.

**1. Native Microsoft Teams Production Integrity.**

As an initial matter, Defendant misreads our Renewed Discovery Deficiency Letter. We were not requesting the files be produced in PDF format. Rather, we requested they be produced in native format. Additionally, Plaintiff did not "characterize" the HTML files as anything other than the format it was produced in. Plaintiff simply pointed out the fact that rather than providing the Teams messages in native format, Defendant produced them in HTML format which strips the metadata of the original Teams messages.

Both Plaintiff's June 21 email and Plaintiff's June 21 letter identified that eighty-nine of Defendant's produced HTML files are named after specific responsive messages, and that eighty-eight of those named messages appear nowhere in the body of the corresponding file or the balance of the production. Defendant's response does not dispute this finding. Defendant states only that it "has no present basis to conclude that responsive communications were omitted" and will "review Plaintiff's concerns with client to determine whether the export process generated the files differently than anticipated." Defendant does not agree to re-collect the native Teams data, does

not agree to produce a load file with complete metadata, and does not address the fifteen messages produced only in edited form. This is not a resolution.

While Defendant should have been able to review its own production, I have included two Excel spreadsheets, one identifying the 88 HTML files in question, and second that provides the full metadata of the HTML files including which messages were edited. If you review each of the files, you will see that while the title of the file appears relevant, the contents of the messages have nothing to do with the title and are frequently between individuals who have nothing to do with this case discussing topics wholly unrelated to the case. This is what we were referring to in our email and letter. It appears the search correctly identified relevant Teams chats, but during the export process the numbering was off resulting in the wrong files being produced.

**2. Custodial and Email ESI Collection.**

Every email in Defendant's Master Production, GAINES000001 through GAINES000603, traces to a single mailbox, that of Jamie Hickey, and a portion of that production was printed from her Deleted Items folder. It appears Defendant has not collected the mailboxes or Teams data of Brendan O'Shaughnessy, Kathryn Creedon, or Evan Gaines, despite Request for Production Nos. 9, 14, 15, 32, and 34. Defendant's response maintains its boilerplate overbreadth and proportionality objections to those requests without explanation specific to this case. Defendant also declines to confirm, in writing, the date its litigation hold issued and its scope, notwithstanding that responsive emails were located in a deletion folder. As to the alleged overbreadth, Defendant has stated several times it would like to propose more pointed search terms but has failed to do so. Similarly, other than relying on boilerplate objections, Defendant has failed to identify how the search terms in Request for Production No. 14 are allegedly overbroad and/or not proportional to the needs of the case.

**3. Performance Success Plan Check-In Records.**

Workday reflects a single documented check-in during the January 8 to February 7, 2024 Performance Success Plan window, on January 25, 2024. Defendant nonetheless denied Request for Admission No. 19 and maintains, without record support, that Mr. O'Shaughnessy met with Plaintiff on a weekly basis. Defendant's response does not produce the calendar invitations, acceptances, cancellations, or non-attendance records requested by Request for Production No. 33, and its incorporation by reference under Rule 33(d) does not identify any record by Bates number that supports a weekly-meeting schedule. To be sure, Mr. O'Shaughnessy testified there would be calendar invites, among other records. (O'Shaughnessy Dep. pp. 182-183).

**4. Comparator and Performance-Metric Records.**

Defendant terminated Plaintiff for purportedly failing to meet numeric Performance Success Plan goals, yet has not produced the Salesloft, Salesforce, or 6Sense data underlying those goals, and has refused outright to produce the Zarine Pardiwalla comparator file. Defendant's response reiterates its boilerplate relevance and proportionality objections without addressing why the underlying performance data Defendant itself cites as the basis for termination is not discoverable.

More concerning, Defendant attempts to choose who it deems similarly situated. But an employer may not unilaterally determine who is similarly situated to a plaintiff alleging employment discrimination. *Jones v. Johnson*, 801 F. App'x 338, 348 (6th Cir. 2020). To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992).

O'Shaughnessy testified he placed Basil, Sinny, Ahad and Anil on Performance Success Plans. Ms. Hickey testified she and O'Shaughnessy attempted to place Mr. Pearlman on a PSP but he chose to resign. These individuals all fell under Mr. O'Shaughnessy, were placed on a PSP (or attempted to), were subject to the same standards, and engaged in similar conduct (performance). The files are certainly relevant and proportional to the needs of the case. Mr. Gaines is certainly entitled to discovery of PSP plans, whether these individuals engaged in ADA and/or FMLA activity, and the circumstances of their resignation/termination.

We look forward to your response(s).

Sincerely,

**THE EMPLOYMENT & COMMERCE LAW GROUP**

**G. Brandon Hall**